SNUFFY SMITH MOTORS *v.* UNIVERSAL C.I.T.

5-3051                                    370 S. W. 2d 808

Opinion delivered September 30, 1963.

*McMath, Leatherman, Woods & Youngdahl,* for appellant.

*Wright, Lindsey, Jennings, Lester & Shults,* for appellee.

FRANK HOLT, Associate Justice. This case involves the question of title to two automobiles. Upon a trial before the Circuit Judge, sitting as a jury, this issue was determined in favor of the appellee, Universal C.I.T. Credit Corporation. The appellant, Snuffy Smith Motors, Inc., contends, in effect, that the appellee is not in a position to claim title as an innocent purchaser.

The appellant, a corporation domiciled in Houston, Texas, is a wholesaler of Volkswagen automobiles which it imports from Germany. On or about April 8 or 9, 1960, appellant had delivered by truck seven (7) Volkswagens to Pat Berry Auto Sales in Benton, Arkansas, a customer of approximately one (1) year. An invoice was delivered with the shipment. On April 11, 1960, the appellant drew seven (7) drafts for $1,600.00 each on its

customer, Berry, and forwarded the "envelope drafts" with title documents enclosed in each to Berry's Benton bank for collection. The drafts were returned uncollected by the bank several times and each time they were sent through again. They were never paid and finally returned by the bank to the appellant. Also, on April 11, 1960, the date of the drafts, Pat Berry "floor planned" with appellee these seven (7) cars, which included the two (2) in question, by giving a chattel mortgage therefor. This chattel mortgage was accepted by appellee under an arrangement between appellee and Berry whereby appellee financed Berry's inventory of the seven (7) cars to the extent of $1,600.00 on each of these cars, or a total of $11,200.00. Appellee advanced a loan for this amount to Berry on this date. As each automobile was sold by Berry it was the custom for him to pay off the mortgage on the vehicle. This is known as a "floor plan" arrangement. It was customary for appellee to make a periodic check on its customers to determine if the inventory which they financed was in stock. On May 2, 1960 appellee discovered Berry had sold some cars without remitting, pursuant to their agreement. Thereupon appellee invoked the "jeopardy clause" in its chattel mortgage and picked up the balance of the cars it had "floor planned" for Berry, including the two Volkswagens in question, since Berry was unable to make payment for the vehicles he had sold. A few days later appellant learned of this and demanded, as owner, that appellee deliver up the two (2) cars in question, contending that since Berry had never paid appellant for the cars and the necessary title paper had never been delivered by appellant to Berry that appellant was the rightful owner and entitled to possession of these two (2) cars. Appellee refused to deliver possession, whereupon appellant instituted suit for conversion seeking $3,200.00 as the value of the two (2) cars.

In its answer appellee contended that appellant was estopped to assert title by its conduct in delivering possession of the cars to Berry with a written invoice or bill of sale and, further, appellee claimed that it was a *bona fide* purchaser. Upon a trial the appellant admitted de-

livering an invoice with the cars but denied delivering to Berry any bill of sale, title certificate, or certificate of origin. Claude Hill, a branch manager of appellee and an employee for thirteen (13) years, testified that he approved and initialed the chattel mortgage on the two (2) cars and the issuance of the loan thereon only after there being exhibited to him a bill of sale which he allowed Berry to retain as was the custom. He claimed it was his practice to require evidence of title before approving a loan.

Appellant insists that no bill of sale or evidence of title to the cars was ever delivered to anyone other than the forwarding of the title papers with the ''envelope drafts'' to the Benton bank. Berry corroborated appellant to the effect that he had never had in his possession a bill of sale or evidence of title to the cars and, therefore, none was ever exhibited to Hill by him or anyone else in connection with the loan. Further, that as a customer of appellee's he was customarily extended credit by merely giving a chattel mortgage without any supporting evidence of title; that he had blank chattel mortgages furnished by appellee which he, or his nineteen (19) year old nephew, would complete and bring to the Little Rock Office of appellee for approval and if his supply was exhausted, he would come to the Little Rock Office with the necessary information and there execute the necessary chattel mortgage without any evidence of title in either event; he denied that he had signed the particular chattel mortgage in question, although $11,200.00 was advanced to him on this mortgage; he asserted that his nephew handled most of such transactions and he had not authorized him to sign this particular chattel mortgage; he admitted that on one occasion his nephew had borrowed temporarily from the bank a title which had accompanied a draft. He also admitted that he had sold two (2) of the seven (7) Volkswagens to customers without delivery of the necessary title papers, advising them that they would be forthcoming. Appellant, Smith, testified that he had finally collected from Berry on five (5) of the seven (7) cars in

this shipment. No other witnesses appeared on behalf of either party.

We agree with the appellant that the only real question presented is whether appellee can claim as an innocent purchaser for value.[1] This question was before the Trial Judge, sitting as a jury, and the evidence adduced was in hopeless conflict. He exercised his right and duty in rendering a decision in this controversy and approved the version of the appellee. We have many times held that on appeal the findings of the Trial Judge, sitting as a jury, must be upheld where there is any substantial evidence to support his decision. *Peterson* v. *Garland County*, 188 Ark. 1167, 65 S. W. 2d 18. We are of the opinion that the decision of the Trial Judge in the case at bar is supported by substantial evidence.

It is undisputed in this case that appellant delivered possession of its cars to Berry together with an invoice which contained the name and address of appellant, the price, serial and motor numbers of the seven (7) automobiles and also showed Pat Berry Auto Sales, Benton, Arkansas, as the purchaser. In addition, we find these words as a part of this instrument:

"* * * I hereby certify that no credit has been extended to me for the purchase of this motor vehicle except as appears on the face of this agreement."

No extension of credit to Berry as a purchaser was indicated on this "invoice" which was prepared and furnished by appellant. The cars in question were in Berry's possession for almost a month, during which time appellant's drafts remained unpaid in spite of repeated efforts to collect them. The appellee had done business with Berry over a considerable length of time and this was the first time it had occasion to be wary of him. This was also the first trouble appellant had with Berry. Appellee acted promptly. Appellant did not. Berry admitted that thirty (30) or forty-five (45) days before repossession by appellee [or on a date previous to the

---

[1] In this case we do not consider the Certificate of Title Act applicable since this was a transaction between dealers. Ark. Stat. Ann. §75-153 (Repl. 1957) ; Ark. Stat. Ann. §75-132 (Repl. 1957).

chattel mortgage in question] he was informed that in the future evidence of title would have to be exhibited to appellee before approval of a loan. He maintained, however, that they finally excepted new cars and Volkswagens from this requirement. Appellant admitted that he knew Berry and other such dealers in his position necessarily had to "floor plan" their cars with lending institutions. It was only after repossession that appellee had any knowledge of appellant's retained interest in the cars. Where one of two innocent parties must suffer, we have held that the burden should be borne by the one whose conduct can be said to have induced the loss. *Commercial Credit Co.* v. *Hardin,* 175 Ark. 811, 300 S. W. 434. We think the appellee is least at fault as between it and appellant.

Also, we have held that a bill of sale is sufficient to pass title even in the absence of an assignment of the certificate of title. *House* v. *Hodges,* 227 Ark. 458, 299 S. W. 2d 201. There the Court said:

"*   *   * We find nothing in the Motor Vehicle Act which states that a *bona fide* sale of a vehicle cannot be made except by an immediate assignment of certificate of title. It is true that the purchaser cannot obtain a license, nor legally operate the vehicle without obtaining such certificate, and one so doing would be guilty of a misdemeanor,   *   *   * The failure of appellee to obtain the certificate of title at the time he received the bill of sale does not deprive him of title, for the certificate of title *is not title itself* but only *evidence of title.*   *   *   * Let it simply be added that our statute does not purport to make void, sales which are accomplished without compliance with each provision, where such sale is *bona fide.*"

It follows, in the case at bar, that a bill of sale was sufficient evidence of title upon which to predicate a valid and enforceable chattel mortgage.

Affirmed.