The Honorable Julia Hughes Jones Auditor of State State of Arkansas 230 State Capitol Little Rock, AR 72201
Dear Ms. Jones:
This is in response to your request for an opinion regarding A.C.A. 18-28-201, et seq., which governs procedures in Arkansas pertaining to unclaimed property. Your specific question is this regard is as follows:
 1. If a bank assesses an `across the board' service charge or service charge increase, sending notification to dormant as well as active accounts, does this change or increased change constitute a `lawful deduction' in accordance with the Arkansas Code Title 18, Chapter 28, Section 202(a)?
The answer to this question will, it seems, depend largely upon the particular facts and circumstances in each instance. We will, however, review the applicable law in order to provide some general guidance in this area.
Relevant to your inquiry is A.C.A. 18-28-202 wherein it states in part as follows:
 The following property held or owing by a banking or financial organization or by a business association is presumed abandoned:
 (a) Any demand, savings, or matured time deposit made in this state with a banking organization, together with any interest of dividend thereon, excluding any charges that may lawfully be withheld, unless the owner has within seven (7) years. . . . [Emphasis added.]
A.C.A. 18-28-202(a).
The threshold inquiry in each instance, therefore, is whether the charges in question "may lawfully be withheld." With regard to service charges or service charge increases, the right to levy such charges will generally depend upon the particular terms surrounding the deposit. The question will, in other words, require a factual determination as to whether there is a contractual basis for such charges. See, generally, Haseman v. Union Bank of Mena, 262 Ark. 803,562 S.W.2d 45 (1978), on appeal, 268 Ark. 318, 597 S.W.2d 67
(1980).
It may reasonably be concluded that the terms of agreement between the institution and depositor will also determine the notice requirement. In Haseman, supra, the agreement governing use of passbooks stated that any change in the controlling rules and regulations could be made by posting a notice in the bank lobby for five consecutive days. The court upheld a change in the terms regarding saving accounts, concluding that the notice provided was in accordance with the rules, as established by agreement. The court rejected an argument that actual notice was required, stating:
 We do not agree that the notice was deficient in this case. The question of notice was a matter agreed upon when the passbook was issued. The general rule is that a depositor by accepting a passbook is bound by the rules it contains.
268 Ark. at 320.
The court also refused to conclude that the notice provided failed to satisfy due process of law. Id., at 321. The court stated: "Due process does not always require actual notice." Id. (Citations omitted.)
The sufficiency of the notice will, it seems, involve a question of fact in each case.
Although the contractual terms will, as a general matter, be controlling in my opinion, it must be noted that the Arkansas Supreme Court has in one instance approved the withholding of certain "costs" from unclaimed property funds based upon notions of fairness. In Ark. Dept. of Fin. Adm. v. City of N. Little Rock, 280 Ark. 512, 659 S.W.2d 937 (1983), the court upheld a city's recovery of a "bookkeeping charge" is connection with its unclaimed utility deposits.280 Ark. at 513. The court determined that the city suffered a loss due to the cost of its employees' working hours in determining the total amount of the unclaimed deposits over a twenty-year period. This unanticipated extra expense resulted, the court reasoned, from passage of the unclaimed property law. Thus the state, rather than the city, should incur this financial burden. Id., at 513-514.
It should therefore be recognized that there may be instances, depending upon the particular facts, where the court would uphold the withdrawal of expenses from unclaimed property funds. It is my opinion, however, that the facts of the Ark. Dept. of Fin. Adm. v. N. Little Rock case, supra, are somewhat unique in that the city was required to, as noted by the court, ". . . comb its records for many years past to determine the total of some 7,893 unclaimed deposits."280 Ark. at 513. It may be successfully contended that the court's reasoning should not be extended beyond this type of factual scenario.
The Arkansas Supreme Court's reference in Ark. Dept. of Fin. 
Adm., supra, to an Alabama case is, however, also worthy of note. The court rejected a claim based upon the case of Boswell v. Samson, 368 So.2d 547 (Ala.Civ.App. 1978) that the "bookkeeping charge" sought by the city should be disallowed because it was not made until after the unclaimed deposits became reportable under the unclaimed property act. The court stated:
 As for the Boswell case, there the court merely rejected a bank's afterthought by which it tried to impose fictitious monthly service charges upon dormant accounts against which no such charges had been made until the state enacted the Uniform Unclaimed Property Law.
280 Ark. at 513.
In Boswell, supra, no service charges were assessed against dormant accounts until after the funds had become reportable and deliverable to the State Revenue Commissioner (the equivalent of the Arkansas Auditor of State under Alabama's unclaimed property act.) The Alabama court concluded that the bank in that instance was not lawfully entitled to deduct this "deferred accumulative" service charge on dormant accounts.368 So.2d at 549, 551.
An across the board service charge would not, in my opinion, be upheld under circumstances similar to the Boswell case where the charge had historically not been levied and was only deducted after the initial reporting date, that is, June 30 of each year, in accordance with A.C.A. 18-28-211(d).
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
STEVE CLARK Attorney General
SC:arb