Fred H. Harrison, Esq. General Counsel University of Arkansas University Tower Building, Suite 601 1123 South University Little Rock, Arkansas 72204
Dear Mr. Harrison:
This is in response to your request for reconsideration of a recent opinion of this office addressing the application of Arkansas's enactment of the Uniform Disposition of Unclaimed Property Act, A.C.A. §§ 18-28-201
to -233 (1987, Cum. Supp. 1993, and as amended by Act 816 of 1995) (the "Act"), to the University of Arkansas for Medical Sciences ("UAMS") and the Board of Trustees of the University of Arkansas (the "Board").
As you know, in Op. Att'y Gen. 95-036 (copy attached), I concluded that "state agencies [and] state institutions supported by state funds" are not exempt from compliance with the Act. The opinion was issued in response to a question that employed the quoted language and asked, without elaboration, factual background, or the identification of any particular state agency or institution, simply whether such agencies or institutions are exempt from compliance with the Act.
In rendering the opinion, I relied primarily upon the statutory definitions of the words "person" and "holder." "Person" is defined to include, among others, any government, political subdivision, public corporation or public authority, and "any other legal or commercial entity." A.C.A. § 18-28-201(7) (Cum. Supp. 1993). "Holder" is defined in part as "any person in possession of property subject to" the Act. A.C.A. § 18-28-201(4). I then cited two provisions of the Act, A.C.A. §§ 18-28-208
and -209 (Cum. Supp. 1993), that expressly apply, respectively, to property held by governmental entities, including any "federal, state, or local government, or governmental subdivision, agency, or entity," and to property held by any holder of property in the ordinary course of the holder's business. It followed, in my opinion, that "state agencies [and] state institutions supported by state funds" are not exempt from compliance with the Act.
Again, the opinion did not address whether or how the Act applies to any particular governmental body. The opinion was intended, rather, to convey my conclusion that, as a fundamental proposition, governments are "persons" and may be "holders" under the Act, and do not enjoy an exemption from the Act's operation merely because they are public bodies; no other reason they might be exempt was stated or suggested in the request. In view of the lack of specificity of the request that prompted the issuance of Op. Att'y Gen. 95-036, a more detailed response was not practicable.
Your request neither cites a blanket exemption from the Act's provisions enjoyed by governmental bodies nor argues that governments generally are exempt from the Act merely by virtue of their status as governments; rather, your request argues that property held by UAMS or the Board is not subject to the Act. Even if I were to conclude here that property held by UAMS, the Board, or both, is not subject to the Act due (as argued in your request) to the "unique position" of the Board and UAMS, such a conclusion would not, in my view, negate the general rule stated in Op. Att'y Gen. 95-036 that governmental bodies are not exempt from the Act merely by virtue of their being governmental bodies. It is clear to me that the conclusion stated in that opinion is correct. See Arkansas Dep't of Fin. and Admin. v. City of North Little Rock, 280 Ark. 512,659 S.W.2d 937 (1983); State v. Green, 456 So.2d 1309 (Fla.Dist.Ct.App. 1984); State v. Coe, 254 Ore. 365, 460 P.2d 357 (1969) (in each of which the Act or another state's enactment of the Uniform Disposition of Unclaimed Property Act (the "Uniform Act") was successfully invoked by a state to take custody of property held by a governmental unit). Accordingly, I must decline to modify the fundamental conclusion reached in Op. Att'y Gen. 95-036. I will, however, briefly address your arguments that property held by UAMS or the Board is not subject to the Act and state my conclusions arising therefrom.
You assert that UAMS is not a legal entity but, rather, merely a campus of the University, and therefore is not a "person" within the meaning of that word as defined in A.C.A. § 18-28-201(7). It would seem to me to follow that UAMS is not capable of holding property, whether or not of a sort otherwise subject to the Act. Although it might be argued that UAMS is a "person" under some other portion of the statutory definition,[1]
I conclude, based upon your assertion with respect to the legal status of UAMS and my assumption that UAMS therefore holds neither legal nor equitable title to property of any kind, that UAMS is not a "person" for purposes of the Act. This conclusion is, of course, not particularly helpful in resolving the ultimate issue apparently present here because, if UAMS holds no property, it is irrelevant whether UAMS is a "person."
The question becomes, then, whether unclaimed property arising as a result of the operations of UAMS, held by the Board, is subject to the Act. Certainly if the Board is not a "person," it cannot be a "holder" and no property held by it will be subject to the Act. It is my view, however, that the Board is clearly a "person" as defined in the Act. Your request itself refers to the Board as "the legal entity which by statute is made a body politic and corporate." [Emphasis added.] As noted above, A.C.A. § 18-28-201(7) defines "person" to include any legal entity. The Board is a "body politic and corporate" having "all the powers of a corporate body." A.C.A. § 6-64-202. The possible existence of questions of whether and how particular substantive provisions of the Act apply to property held by the Board does not alter my conclusion that the Board is a legal entity and thus a "person" under the Act.
Your request discusses at some length A.C.A. § 18-28-208, the substantive provision of the Act generally addressing property held by governmental units. I express no view with respect to whether or how that section applies to property held by the Board because I conclude below that property held by the Board is subject, at the very least, to A.C.A. §18-28-209. That conclusion would appear to make somewhat irrelevant the question of whether property held by the Board is subject to some other provision of the Act: in my view, unclaimed intangible personal property held by the Board will at some point in time either be presumed abandoned under A.C.A. § 18-28-208 or some other specific substantive provision of the Act, or be "not otherwise covered by this subchapter," and therefore subject to being presumed abandoned, under A.C.A. § 18-28-209. That statute provides:
All intangible personal property, not otherwise covered by this subchapter, including any income or increment thereon and deducting any lawful charges, that is held or owing in this state in the ordinary course of the holder's business and has remained unclaimed by the owner for more than seven (7) years after it became payable or distributable is presumed abandoned.
You argue in your request that this section "is intended not to be a net to catch any entities not described within the Act, but rather describes property which has not otherwise been described by the Act. . . ." [Emphasis original.] I must disagree. In my view, there is no property subject to the Act that is described only in A.C.A. § 18-28-209: both A.C.A. § 18-28-207 (Cum. Supp. 1993) (addressing property held in a fiduciary capacity) and A.C.A. § 18-28-208 (addressing property held by governmental bodies) apply to "[a]ll intangible personal property" so held, and A.C.A. § 18-28-207 also applies to "any income or increment thereon." This is precisely the property to which A.C.A. § 18-28-209
applies; the only distinction is the identity of the holder and (with respect to A.C.A. § 18-28-207) the manner in which it is held.
In addition, the argument that the "catch-all" provision of the Uniform Act (codified in Arkansas as A.C.A. § 18-28-209) does not apply to entities that are not mentioned in the more specific sections of the Uniform Act was expressly rejected in State ex rel. Callahan v. Marshall Field Co., 83 Ill. App. 3d 811, 404 N.E.2d 368 (1980). The court so held relying both upon the rule of construction that a statute's plain meaning should be given effect, and upon policy considerations. With respect to the latter, the court stated: "We believe the legislature, in keeping with the obvious policy of the Act, intended by the adoption of [the "catch-all" provision] to protect the owners of all intangible personal property held by anyone in the ordinary course of business." [Emphasis added.] I agree with the reasoning set forth in that opinion.
Finally, with respect to A.C.A. § 18-28-209, you assert that the Board is not a "`business' entit[y]" and therefore that it cannot hold property "in the ordinary course of [its] business," as required by the statute before property is subject to being presumed abandoned thereunder. You cite no authority to support this assertion, and I have found none. It is my understanding that, among other activities and operations on the UAMS campus, the Board there operates a hospital and various clinics, and charges patients fees for services rendered. In the absence of persuasive argument or authority indicating otherwise, I am unable to conclude that the Board does not undertake a "course of business" on the UAMS campus.
You advance several other arguments to support the proposition that property held by the Board is not subject to the Act. You point out that unexpended balances of general revenues in support of an institution of higher education are not left in the state treasury at fiscal year-end, but are transferred forward and made available for support of the institution in the following fiscal year. A.C.A. § 19-4-604(g) (Repl. 1994). You cite this rule as an expression of legislative intent that "once appropriated, general revenues should remain available for public institutions of higher education." In my view, the funds at issue here are not "unexpended." By definition, the Board holds such funds for "owners" other than itself.
You argue that my interpretation of the Act will indirectly require the Board to deposit cash funds into the state treasury prior to appropriation, even though the General Assembly has not expressly so required. I do not agree that my interpretation necessarily requires that result. Amounts subject to the Act will not only have been appropriated, they will also have been spent, and no longer constitute the property of the Board. In the alternative, it appears that the General Assembly is empowered to require indirectly that which it may require expressly.
You argue that the funds alleged to be subject to the Act are themselves "cash funds" as defined in A.C.A. § 19-4-801 (Repl. 1994) as they are "held by or owned by" the Board and not on deposit in the state treasury, and that the General Assembly's practice of appropriating such funds to the Board indicates a legislative intent that neither such funds nor the Board are subject to the Act. Once again, you point out that the General Assembly has not in the past required cash funds to be deposited to the state treasury prior to appropriation. In my view, the General Assembly's power to appropriate funds beneficially owned by another is doubtful at best. At any rate, such an appropriation would not appear to constitute an attempt to transfer the beneficial ownership of the funds appropriated.
Finally, you assert that the Board has "an absolute claim" to funds, as against the payee, after the statute of limitations applicable to the obligation underlying the payment of such funds has run. As you know, the effect of the running of a statute of limitations on the state's ability to invoke the Act is at issue in Baptist Health v. Wingfield, No. IJ95-5627 (Pulaski County Chancery 1995). Pursuant to this office's longstanding policy of not rendering opinions on matters that are the subject of pending litigation, I must decline to address your assertion other than by calling to your attention A.C.A. § 18-28-216, which provides:
The expiration of any period of time specified by statute or court order during which an action or proceeding may be commenced or enforced to obtain payment of a claim for money or recovery of property shall not prevent the money or property from being presumed abandoned property, nor affect any duty to file a report required by this subchapter or to pay or deliver abandoned property to the Auditor of State.
The argument advanced in your supplemental letter, that Ark. Const. art.14, § 2, prohibits the application of the Act to funds held by the Board, appears to hinge upon your assertion that "[m]onies held by the University as to which the owners' or payees' claims have been barred by the applicable statute of limitations remain the property of the University. . . ." Because the validity of a substantively identical assertion is at issue in the litigation mentioned above, I must decline to state any conclusion with respect to this argument.
This letter is merely an informal, advisory statement of my conclusions and rationale with respect to the issues raised in your correspondence. Obviously, only a court having jurisdiction can answer your questions definitively.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh
Enclosure
[1] It might be argued, for example, that UAMS is a "business association" or "commercial entity" and thus within the statutory definition of "person."