NATIONAL BANK OF COMMERCE (of El Dorado, Arkansas) Conservator of the Estate (only) of Linda Hoffman; and Steve Hoffman, Her Husband; and National Bank of Commerce (of El Dorado, Arkansas) Guardian of the Estate (only) of Brett Hoffman, Kent Hoffman and Allison Hoffman, Minors *v.* Dr. Sam BEAVERS and Dr. Shelby Woodiel

89-305                                          802 S.W.2d 132

Supreme Court of Arkansas
Opinion delivered December 10, 1990
[Supplemental Opinion on Denial of Rehearing
January 28, 1991.*]

*Newbern, Corbin, and Brown, JJ., not participating.

*Bernard Whetstone, P.A.*, by: *Bernard Whetstone* and *Bob Davidson*, for appellant.

*Barber, McCaskill, Amsler, Jones & Hale, P.A.*, for appellee Dr. Sam Beavers.

*Wright, Lindsey & Jennings*, for appellee Dr. Shelby Woodiel.

JACK HOLT, JR., Chief Justice. The appellants, National Bank of Commerce, Conservator of the Estate of Linda Hoffman; Steve Hoffman; and National Bank of Commerce, Guardian of the Estate of Brett, Kent, and Allison Hoffman, minors, brought suit against the appellees, Dr. Sam Beavers and Dr. Shelby Woodiel to recover damages for injuries allegedly arising from the negligent treatment of Linda Hoffman for a condition known as temporomandibular joint dysfunction, or "TMJ."

Appellants contend that Mrs. Hoffman's treatment for "TMJ" consisted of two phases. It is alleged that Dr. Woodiel

improperly treated Mrs. Hoffman during phase one and then negligently referred her to Dr. Beavers, who was not qualified to treat her disorder. It is contended that Dr. Beavers rendered negligent care to Mrs. Hoffman during phase two of her treatment. The jury found no negligence on the part of either Dr. Woodiel or Dr. Beavers and returned a verdict in their favor.

On appeal, appellants raise six points of error, all of which have no merit.

## I. SUPPRESSION OF TESTIMONY

Appellants first contend that the trial court erred in the suppression of testimony that prevented the jury from being informed of the true facts surrounding the occurrence. They claim the jury was "only permitted to be informed of the tip of the iceberg." This allegation appears to be based on appellants' assertion that the suppressed evidence was admissible on the issue of punitive damages, i.e. to show wanton and willful conduct on the part of Dr. Woodiel and Dr. Beavers, a theory rejected by the trial court. *See National By-Products, Inc.* v. *Searcy House Moving Co., Inc.,* 292 Ark. 491, 731 S.W.2d 194 (1987) (award of punitive damages justified only where evidence indicates defendant acted wantonly or with such conscious indifference to consequences that malice may be inferred).

In analyzing the record before us, we note that the appellants do not furnish specific arguments in support of the proffered testimony which was excluded by the trial court; rather, this court is cited, generally, to various rules of the evidence, to case law concerning the admissibility of same or similar occurrences, and to excerpts from a Delaware case discussing the admissibility of evidence where punitive damages are involved. *See Strauss* v. *Biggs,* 525 A.2d 992 (Del. Supr. 1987).

Unlike the present case, the defendant in *Strauss* conceded liability for compensatory damages, leaving the jury with only the amount to be determined. The plaintiff's theory in *Strauss* was that the defendant was running a "podiatric mill" for profit, and the plaintiff was permitted to place into evidence additional acts of negligence to show the defendant's conduct was deliberate, thereby warranting punitive damages.

Here, appellants similarly theorize that Dr. Woodiel and Dr.

Beavers were running a "dental mill" and that testimony regarding various acts of negligence and the competency of both doctors should have been admitted to show their willful and wanton misconduct surrounding Hoffman's treatment. In support of their theory, appellants furnished to the trial court proposed testimony and numerous depositions, supported by writings labeled ""Partial Pre-trial Brief on Subjects of (A) Punitive Damages and (B) Admissibility of Evidence of Greed and Other Infractions in Support of Punitive Damages." In this brief, appellants name and diagram the various witnesses, their relationships to one another, and their purported testimony — all in support of their claim for punitive damages.

Before we reach a determination of admissibility of this tendered evidence in support of punitive damages, our initial, fundamental inquiry as to admissibility must be predicated on the question of whether or not it is relevant to the events in question. To be admissible, the proferred testimony must necessarily have been related to the specific treatment of Linda Hoffman. Evidence which is not relevant is not admissible. A.R.E. Rule 402. In addition, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cummulative evidence." A.R.E. Rule 403. The trial court has broad discretion in decisions of admissibility, and we will not reverse its ruling absent an abuse of this discretion. *Northwestern Nat'l Life Ins. Co.* v. *Heslip*, 302 Ark. 310, 790 S.W.2d 152 (1990).

We further note that the jury found no negligence and, consequently, awarded no damages. Since there can be no award for punitive damages, absent an award for compensatory damages, (*see Bell* v. *McManus*, 294 Ark. 275, 742 S.W.2d 559 (1988)), all testimony submitted, or not submitted to the jury in support of punitive damages is of no moment. Even if the trial court was wrong in the suppression of testimony on the basis of the issue of punitive damages, its actions, at most, would constitute harmless error since the jury failed to return a verdict for consequential damages. *See Haseman* v. *Union Bank of Mena*, 268 Ark. 318, 597 S.W.2d 67 (1980).

Appellants presented eleven witnesses over seven of the twelve days of trial. In addition, they asked the trial court for rulings of admissibility of deposition testimony from a score of witnesses, only some of which are being challenged on appeal. Examination of this evidence reflects that it either failed to meet the threshold test of relevancy under A.R.E. Rule 402 or, if relevant, was subject to exclusion under A.R.E. Rule 403 or that it was tendered by the appellants for the purpose of establishing the issue of punitive damages, which, as previously mentioned, is of no moment.

## II. DISMISSAL OF HOFFMAN CHILDREN

In their second point for reversal, appellants contend the trial court erred in dismissing the Hoffman children from the lawsuit via summary judgment. Appellants claim the children had a valid cause of action against Dr. Beavers and Dr. Woodiel for "setting in motion a chain of events in a domino-effect fashion," the effect of which was to cause Mrs. Hoffman to inflict physical, psychological, and emotional injuries on her children. Allegedly, Dr. Beavers' maltreatment resulted in such pain to Mrs. Hoffman as to cause her to lose control and abuse the children, thereby requiring that they be placed under the care of a psychologist.

Appellants concede the Arkansas does not recognize a cause of action for loss of parental consortium (*see Gray* v. *Suggs*, 292 Ark. 19, 728 S.W.2d 148 (1987)) and, instead, characterize the above mentioned "domino effect" as constituting a claim for infliction of emotional distress. Notwithstanding our unwillingness to extend this cause of action as far as appellants advocate, we need not consider its merits and whether dismissal was proper since the jury's verdict renders any potential error harmless. *See Haseman* v. *Union Bank of Mena*, supra.

The jury found that Dr. Beavers was not negligent in his treatment of Mrs. Hoffman. The children's claim that Dr. Beavers either negligently or intentionally treated their mother improperly, and thus indirectly inflicted emotional distress on them, becomes irrelevant. Any evidence introduced by the children, in furtherance of their claims of emotional distress, would not have affected the jury's decision with regard to the issue of Dr. Beavers' conduct. We will not reverse for error where it is evident that such error did not affect the verdict. *Insured Lloyds*

v. *Mayo*, 244 Ark. 802, 427 S.W.2d 164 (1968).

### III. VOIR DIRE

Appellants next contend that the trial court erred in prohibiting their counsel, during voir dire, from reading the names of the individual members of each of the law firms representing the defendants. This claim is also without merit.

Appellants provide in their brief and appendix the following exchange with the trial court during voir dire examination:

MR. WHETSTONE:

Now the defendants here are represented by two different law firms here in town. And even though the lawyers present in this case — you may not be involved with them in any way, if you are in anywise — you or any member of your immediate family have been represented by or been involved in any way with any member of their firm, it would be pertinent information that we should know and properly we should know.

That being true, I'm going to call the names —

THE COURT: Mr. Whetstone, I don't want you to go through the name of every lawyer in every law firm, sir. I've asked them if they know any attorneys or have ever been represented by any attorneys in those law firms and I trust this jury to know who they're acquainted with. *I just don't want to take the time of naming off every lawyer in the law firms. That'd take a long time to do that, sir.*

MR. WHETSTONE: I shouldn't go into that any further at all?

THE COURT: No, sir. I've asked them and we've both asked them if they know any lawyers in those law firms and I trust these people to know who they know of the attorneys. It's not like they know a lot of attorneys out there, I'm sure. *I'd rather we didn't take the time, Mr. Whetstone.* I'm sorry, sir. Let's move on.

[Emphasis added.]

In charging the trial court with error, appellants quote from Ark. Code Ann. § 16-33-304 (1987), which pertains to challenges

to the trial jurors in criminal proceedings rather than Rule 47 of the Arkansas Rules of Civil Procedure. Rule 47 provides:

> (a) EXAMINATION OF JURORS. The Court shall either permit the parties or their attorneys to conduct the examination of prospective jurors or itself conduct the examination. In the latter event, the court shall permit the parties or their attorneys to supplement the examination by such further inquiry as it deems proper.

It is obvious in this instance, that the court conducted the voir dire examination in which he asked the panel whether or not they knew, or had been represented by, any of the attorneys or law firms involved in this litigation, and then determined that he did not deem it proper or necessary to permit the attorneys to supplement his inquiry.

■■ There are no indications from the record that any of the jurors did, in fact, know any of the attorneys representing Dr. Woodiel and Dr. Beavers, nor did they identify any relationships with the attorneys' law firms, and we think it is sufficient to say that the appellants have not demonstrated any prejudice. The extent of juror examination rests within the trial court's discretion and, absent a showing of abuse, we will not reverse the matter on appeal. *Goodwin* v. *Harrison*, 300 Ark. 474, 780 S.W.2d 518 (1989).

## IV. IMPEACHMENT

For the fourth point of error, appellants argue that the trial court erred in permitting defense counsel to impeach Melissa Rollins through questioning of a subsequent witness, Peggy Hall, without first laying a proper foundation.

Peggy Hall, Dr. Beavers' office manager, testified that either at the time, or after Melissa Rollins was discharged by Dr. Beavers, Ms. Rollins told Ms. Hall, "I will get Dr. Beavers."

Appellants contend that Ms. Hall's testimony with regard to this statement was in error of Rule 613(b) of the Arkansas Uniform Rules of Evidence, which states:

> (b) Extrinsic Evidence of Prior Inconsistent Statement of Witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness

is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require . . . .

■ Appellants argue that Ms. Rollins was not given the opportunity to explain or deny the statement before Ms. Hall was questioned about it. We disagree. Rule 613(b) is inapplicable in this situation since nothing in the record indicates Ms. Rollins ever made a remark either in accordance with, or in opposition to, the statement testified to by Ms. Hall. Therefore, no "prior inconsistent statement" was at issue, and the court's overruling of the appellants' objection on this basis was correct.

## V. REPUTATION TESTIMONY

Appellants submit, for their fifth point of error, that the trial court erred in suppressing testimony from Dr. George Lay regarding his knowledge of Dr. Beavers' reputation for truthfulness among his associates.

■ Dr. Lay, a witness for appellants, was questioned regarding his knowledge of Dr. Beavers' reputation for honesty in the community during direct examination. When Dr. Lay stated that he had only met Dr. Beavers once, and was not aware of his reputation in the community at large, the trial court refused to allow him to testify further on this subject. Appellants objected but failed to proffer additional testimony from Dr. Lay. We will not find error on a trial court's ruling that excludes evidence when there is no proffer. *Flynn* v. *McIlroy Bank & Trust Co.,* 287 Ark. 190, 687 S.W.2d 114 (1985).

## VI. NEWLY DISCOVERED EVIDENCE

Finally, appellants argue that the trial court erred in refusing to grant their motion for a new trial on the basis of newly discovered evidence. The evidence consisted of a video tape and transcript of a television documentary produced by ABC's "20/20," a weekly news program. The program, which aired following the conclusion of the trial, revealed that a Dr. Owen Rogel was running a "TMJ dental mill" similar, appellants alleged, to the one being operated by Drs. Beavers and Woodiel.

■ Dr. Rogel was acknowledged as an expert authority by

one of the appellant's expert witnesses; however, he was neither a party nor a witness in the lawsuit, and we fail to see the relevance of the t.v. program to the present case. The granting of a new trial based on newly discovered evidence is not a favored remedy, and a trial judge is vested with great discretion in acting on such a motion. *St. Louis Southwestern Rwy. Co.* v. *White*, 778 S.W.2d 483, 302 Ark. 193 (1990). The motion was properly denied.

■ Appellants have asked that we reassess and retax costs. Appellants' points relied on for reversal were vague and over-broad; we find that the appellees' designation of the record was necessary for their response and thus decline appellants' request.

Affirmed.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
### JANUARY 28, 1989

*Bernard Whetstone*, P.A., by: *Bernard Whetstone* and *Bob Davidson*, for appellant.

No response.

Jack Holt, Jr., Chief Justice. The appellants, National Bank of Commerce and Steve Hoffmann, request a rehearing on

the basis of two perceived errors in our opinion.

First, the appellants argue that we overlooked their theory of the case upon which certain testimony, held inadmissible by the trial court, was offered.

We stated in our opinion that the appellants' claim, that the jury was " 'only permitted to be informed of the tip of the iceberg' appear[ed] to be based on appellants' assertion that the suppressed evidence was admissible on the issue of punitive damages, i.e. to show wanton and willful conduct on the part of Dr. Woodiel and Dr. Beavers. . . ." We explained the rule of law (and made it part of our holding) that where there is no award for compensatory damages, as in this case, there can be no award for punitive damages and thus the suppression of testimony on the issue of punitive damages would, at most, constitute harmless error. *See Haseman* v. *Union Bank of Mena*, 268 Ark. 318, 597 S.W.2d 67 (1980).

The appellants rightfully point out that the appellee, Dr. Woodiel, was not included in appellants' claim for punitive damages and that the portion of appellants' complaint requesting punitive damages was directed against Dr. Beavers only. Appellants thus argue that our consideration of the proffered testimony on this basis was error as to Dr. Woodiel and, that we overlooked instances of suppressed testimony supporting "the allegations that Melissa Rollins was performing illegal and negligent treatment to Linda Hoffman." Appellants claim that "[t]his was the issue (the negligence of Dr. Beavers via his unlicensed assistant Melissa Rollins)—not punitive damages." We note that this specific argument was not raised in the appellants' appellate brief and ordinarily we do not consider arguments on rehearing not raised on appeal. *Burks Motor, Inc.* v. *International Harvester Co..*, 250 Ark. 641, 466 S.W.2d 943 (1971). Granted, the issue was raised in appellants' complaint, which was set out in their brief, and alluded to in appellants' statement that Dr. Woodiel testified regarding the damage that might be done if services were performed by an unlicensed assistant (such as Melissa Rollins). Since such allusions may arguably be considered as "arguments", we will discuss the merits of the appellants' contention.

Initially, we acknowledge that our opinion was overbroad in including both Dr. Beavers and Dr. Woodiel in our discussion of

punitive damages since appellants excluded Dr. Woodiel from this part of their claim. Our discussion of the punitive damages claim and the operation of the alleged "dental mill" should have been confined to Dr. Beavers. The issue of punitive damages was not, however, our sole basis for affirming the trial court's suppression of the testimony in question, as the appellants contend.

We stated that before reaching a determination of admissibility in support of punitive damages, "our initial, fundamental inquiry as to admissibility (of the evidence before us) must be predicated on the question of whether or not it is relevant to the events in question." Arkansas Rules of Evidence 402 and 403, regarding relevancy, were cited, along with the appropriate standard for review that the trial court has broad discretion in decisions of admissibility, and we will not reverse its ruling absent an abuse of this discretion. *Northwestern Nat'l Life Ins. Co.* v. *Heslip*, 302 Ark. 310, 790 S.W.2d 152 (1990). In summarizing our holding on this point, we stated:

> Examination of this evidence reflects that it either failed to meet the threshold test of relevancy under A.R.E. Rule 402 or, if relevant, was subject to exclusion under A.R.E. Rule 403 or that it was tendered by the appellants for the purpose of establishing the issue of punitive damages, which, as previously mentioned, is of no moment.

Clearly, we considered, as did the trial court, the threshold issue of relevancy with regard to all of the proffered testimony. Evidence proffered in support of appellants' theory of negligence, without conforming to the rules of evidence, is not enough to warrant its admission at trial.

The appellants cite, as an example in support of their "theory", the testimony of Dr. Woodiel in which he testified that he considered Dr. Beavers to be incompetent and that Dr. Beavers was allowing Melissa Rollins to perform illegal and negligent work on Linda Hoffmann. We again note, as we did in our opinion, that the excerpt from Dr. Woodiel's deposition referred to by the appellants was merely quoted at length in their brief without any argument or reference as to exactly which portion of the testimony the appellants felt was wrongly excluded or the underlying rationale. The court was left to speculate as to the

appellants' exact arguments by piecing together the general citations to various rules of evidence in the brief and the information contained in the pleadings and transcript.

Furthermore, we note that some of Dr. Woodiel's testimony at issue (as well as the majority of other "suppressed testimony") was quoted, verbatim, in the appellants' pre-trial brief entitled "Partial Pre-trial Brief on subjects of (A) Punitive Damages and (B) Admissions of Evidence of Greed and other Infractions in Support of Punitive Damages," leading the trial court, as well as this court, to believe that a claim for punitive damages was the basis for the proffered testimony.

■ Notwithstanding these problems, the trial court properly excluded Dr. Woodiel's testimony, as well as other testimony proffered by the appellants, on the basis of Rule 403, which states that evidence, although relevant, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Dr. Woodiel's admitted lack of expertise in the field of orthodontics, in addition to the fact that appellants called several other dentists as experts, rendered his testimony both misleading and cumulative.

■ The appellants also refer to "dozens of other such instances overlooked in the brief," summarily concluding that ". . . Judge Bogard abused his discretion in suppressing (most, if not all, of) the indicated (in brief) testimony." This broad statement does not meet the requirement of Ark. Sup. Ct. R. 20(f), which states that the petition for rehearing must "distinctly state the grounds relied upon . . . ." Moreover, this "other testimony" consists almost entirely of the testimony of former patients, assistants, and associates of Dr. Beavers who were unconnected with the treatment of Linda Hoffmann, and was thus properly excluded as irrelevant to the issues at bar.

For these reasons, we leave undisturbed our holding that the appellants' proffered testimony was properly excluded either because it was submitted on the issue of punitive damages as to Dr. Beavers or because it was inadmissible under Rules 402 and 403.

The appellants also appear to challenge our holding with regard to the impeachment of Melissa Rollins. Appellants submit no argument but simply quote from our opinion, again, in violation of Rule 20(f) which requires distinct arguments. We thus decline to address this second point.

Petition for rehearing is denied.

NEWBERN, CORBIN, AND BROWN, JJ., not participating.